**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| FLEET CONNECT SOLUTIONS LLC, | |
|---|---|
| Plaintiff, | Civil Action No. 2:25-cv- 00209 |
| v. | |
| PACCAR, INC. d/b/a PETERBILT MOTORS CO., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Complaint against PACCAR, Inc. d/b/a Peterbilt Motors Co. ("Peterbilt" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1 | 6,647,270 | Vehicle Talk | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270/ |
| 2 | 7,123,926 | System and Method For Providing Information To Users Based On The User's Location | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7123926/ |
| 3 | 7,783,304 | Wireless Communication Method | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7783304/ |
| 4 | 8,005,053 | Channel Interference Reduction | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8005053 |

|   | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 5 | 6,633,616 | OFDM Pilot Tone Tracking For Wireless LAN | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6633616 |
| 6 | 7,463,896 | System And Method For Enforcing A Vehicle Code | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463896 |

2. Plaintiff seeks monetary damages.

## PARTIES

3. Plaintiff Fleet Connect Solutions LLC is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4. Defendant PACCAR, Inc. d/b/a Peterbilt Motors Co. is a corporation organized under the laws of the State of Delaware with a place of business at 1700 Woodbrook St., Denton, TX 76205, and may be served with process through its registered agent, Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. *See Home Page*, PETERBILT MOTORS COMPANY (last visited Feb. 7, 2025), https://www.peterbilt.com/ (indicating that Peterbilt's corporate office is at 1700 Woodbrook Street, Denton, TX 76205).

5. On information and belief, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

6. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7. This is an action for infringement of a United States patent arising under 35 U.S.C.

§§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8. Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District, has transacted business in this District, and has committed acts of patent infringement in the District from those regular and established places of business. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9. Defendant has also previously admitted that venue is proper against it in this District. *See Blitzsafe Texas, LLC v. PACCAR Inc.*, 2:19-cv-00393-JRG-RSP, Dkt. No. 20, at ¶23 (E.D. Tex. Feb. 11, 2020) (Defendant admitting that "it maintains a place of business and conducts business within this Judicial District.").

10. Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.

11. Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District; (iii) having an interest in, using or possessing real property in Texas and this District; (iv) and having and keeping personal property in Texas and in this District.

12. Specifically, Defendant intends to do and do business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through inducement of third parties, and offers its products

or services, including those accused of infringement here, to customers and potential customers located in this state, including in this District.

13. On information and belief, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at locations in this District, including, but not limited to, facilities at the following addresses: 1700 Woodbrook Street, Denton, TX 76205, *Contact Us*, PACCAR (last visited Feb. 7, 2025), https://www.paccar.com/about-us/contact/; 11042 Highway 69N, Tyler, TX 75706; 1931 North King's Highway, Nash, TX 75569; and 3901 N. Medford Drive, Lufkin, TX 75901. *See Find a Dealer*, PETERBILT MOTORS COMPANY (last visited Feb. 7, 2025), https://www.peterbilt.com/find-a-dealer.

14. In addition to conducting this business, Defendant employs a number of individuals within this District. These individuals' employment with Defendant is conditioned upon and based on their residence and continued residence within this District to further the specific infringing business activities of Defendant within the District. *See, e.g.*, *Careers*, PACCAR (last visited Feb. 7, 2025), https://jobs.paccar.com/search/?createNewAlert=false&q=&locationsearch=&optionsFacetsDD_country=&optionsFacetsDD_state=&optionsFacetsDD_city=&optionsFacetsDD_facility=Peterbilt+Motors+Company&optionsFacetsDD_lang= (listing two internship opportunities based in Denton, TX).

15. Defendant's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Defendant affirmatively acted to make permanent operations within this District. *See In re: Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017); *In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985).

16. Defendant commits acts of infringement from this District, including, but not

limited to using, installing, testing of the Accused Products, selling and offering to sell the Accused Products, and inducement of third parties to use the Accused Products in an infringing manner.

17. Defendant instructs its employees, agents, and contractors on how to install and use the Accused Products.

## THE ACCUSED PRODUCTS

18. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

19. Defendant uses, causes to be used, sells, offers for sale, imports, provides, supplies, or distributes one or more fleet management tracking solutions, including, but not limited to, the Platform Science Virtual Vehicle Platform, Connected Vehicle Device (CVD) and In-Vehicle Display Tablets, PS Asset Tracking, PS Fleets, PS Telematics, PS Analytics, PS Vehicle Tracking System such as Connected Vehicle Device (CVD), in-Vehicle Display Tablets (ELD tablets), Fleet Management Software/Website/Application, PS Messaging, PS Workflow, PS media manager, PS Navigation, PS DVIR, PS telematics device such as Connected Vehicle Device (CVD), and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions (collectively, the "Accused Products").

20. For these reasons and the additional reasons detailed below and the claim charts attached hereto, the Accused Products practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,647,270

21. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

22. Fleet Connect owns all substantial rights, interest, and title in and to U.S. Patent No.

6,647,270 (the "'270 patent"), including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

23. The USPTO duly issued the '270 patent on November 11, 2003, after full and fair examination of Application No. 09/659,074 which was filed September 11, 2000. *See* '270 patent at 1.

24. The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

25. The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

26. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '270 patent.

27. Defendant has directly infringed one or more claims of the '270 patent by manufacturing, selling, offering for sell, importing, using, providing, supplying, or distributing the Accused Products.

28. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent, as detailed in **Exhibit A** (Evidence of Use Regarding Infringement of U.S. Patent No. 6,647,270).

29. For example, the Accused Products include a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes: a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information, whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit. *See* Exhibit A.

30. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,123,926**

31. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

32. The USPTO duly issued U.S. Patent No. 7,123,926 (hereinafter, the "'926 patent") on October 17, 2006 after full and fair examination of Application No. 10/705,674 which was filed on November 10, 2003. A certificate of correction was issued on August 27, 2013.

33. Fleet Connect owns all substantial rights, interest, and title in and to the '926 patent,

including the sole and exclusive right to prosecute this action and enforce the '926 patent against infringers and to collect damages for all relevant times.

34. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '926 patent.

35. The claims of the '926 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications and tracking systems.

36. The written description of the '926 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

37. Defendant has directly infringed the claims of the '926 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

38. For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '926 patent, as detailed in the claim chart attached hereto as **Exhibit B**.

39. For example, Defendant when using the Accused Products, performed a method for alerting a remote user to an emergency situation via a mobile unit installed in a vehicle. The method includes determining a geographic location of the mobile unit; determining an identity of the vehicle based on a unique identification stored in the mobile unit; determining a priority level

associated with the emergency situation; assembling a header of a communication, the header including the geographic location of the mobile unit, the identity of the vehicle and the priority level, the header capable of being processed upon receipt by a second mobile unit to alert the remote user of the second mobile unit of the emergency situation based on the geographic location of the mobile unit, the identity of the vehicle and the priority level; and transmitting the communication to the second mobile unit.  *See* Exhibit B.

40. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,783,304

41. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

42. The USPTO duly issued U.S. Patent No. 7,783,304 (hereinafter, the "'304 patent") on August 24, 2010 after full and fair examination of Application No. 12/546,645 which was filed on August 24, 2009.  A certificate of correction was issued on May 28, 2013.

43. Fleet Connect owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce the '304 patent against infringers and to collect damages for all relevant times.

44. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

45. The claims of the '304 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of mobile communications and tracking systems.

46.     The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

47.     Defendant has directly infringed the claims of the '304 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

48.     For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '304 patent, as detailed in the claim chart attached hereto as **Exhibit C**.

49.     For example, Defendant, using the Accused Products, performed a method of wireless sly communicating with a mobile unit, the method comprising: establishing a communication link between a first mobile unit and a website; searching a list of users via a log comprising an address of a second mobile unit; outputting a match comprising the address of the second mobile unit *via* a display; constructing a communication comprising a plurality of information fields, the plurality of information fields comprising an address of the first mobile unit and the address of the second mobile unit; transmitting the communication from the first mobile unit, through the website, to the second mobile unit; and storing information related to the communication in a communication log.  See Exhibit C.

50.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for

such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,005,053

51. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

52. The USPTO duly issued U.S. Patent No. 8,005,053 (hereinafter, the "'053 patent") on August 23, 2011 after full and fair examination of Application No. 12/696,760 which was filed on January 29, 2010. A Certificate of Correction was issued on February 14, 2012.

53. Fleet Connect owns all substantial rights, interest, and title in and to the '053 patent, including the sole and exclusive right to prosecute this action and enforce the '053 patent against infringers and to collect damages for all relevant times.

54. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '053 patent.

55. The claims of the '053 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of data transmission in wireless communication systems.

56. The written description of the '053 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57. Defendant has directly infringed one or more claims of the '053 patent by making,

using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

58. Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '053 patent, as detailed in the claim chart attached hereto as **Exhibit D**.

59. For example, the Accused Products include an apparatus comprising: a first wireless transceiver configured to communicate data according to a first wireless protocol; a second wireless transceiver configured to communicate data according to a second wireless protocol that is different from the first wireless protocol; and a controller configured to select one of the first and second wireless transceivers to communicate data of both the first and second wireless protocols, wherein the apparatus is configured to encode data of the wireless protocol for the unselected transceiver into data of the wireless protocol for the selected transceiver. *See* Exhibit D.

60. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT V: INFRINGEMENT OF U.S. PATENT NO. 6,633,616

61. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

62. The USPTO duly issued U.S. Patent No. 6,633,616 (the "'616 patent") on October 14, 2003, after full and fair examination of Application No. 09/935,081 which was filed August 21, 2001. The '616 patent is entitled "OFDM Pilot Tone Tracking for Wireless LAN."

63.     Fleet Connect owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers and to collect damages for all relevant times.

64.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

65.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

66.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '616 patent.

67.     Defendant has directly infringed the claims of the '616 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products. For instance, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 12 of the '616 patent, as detailed in the claim chart attached hereto as **Exhibit E**.

68.     For example, Defendant, using the Accused Products, performed a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver. *See* Exhibit E. The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; processing, in a parallel path to the determining step, the

OFDM preamble waveform with a fast Fourier transform; determining a phase error estimate of a subsequent OFDM symbol relative to the pilot reference points; and processing, in the parallel path to the determining step, the subsequent OFDM symbol with the fast Fourier transform; wherein the determining the phase error estimate step is completed prior to the completion of the processing of the subsequent OFDM symbol with the fast Fourier transform in the parallel path. *See id.*

69. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,463,896

70. Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

71. The USPTO duly issued U.S. Patent No. 7,463,896 (the "'896 patent") on December 9, 2008, after full and fair examination of Application No. 11/524,850 which was filed September 20, 2006. A certificate of correction was issued on August 13, 2013.

72. Fleet Connect owns all substantial rights, interest, and title in and to the '896 patent, including the sole and exclusive right to prosecute this action and enforce the '896 patent against infringers and to collect damages for all relevant times.

73. Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '896 patent.

74. The claims of the '896 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include

inventive components that improve upon the function and operation of preexisting error estimation methods.

75.     The written description of the '896 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

76.     Defendant has directly infringed the claims of the '896 patent by making, using, selling, offering to sell, importing, and/or internal and external testing of the Accused Products.

77.     For instance, as just one example of infringement, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '896 patent, as detailed in the claim chart attached hereto as **Exhibit F**.

78.     For example, Defendant, using the Accused Products, performed a method for enforcing a vehicle code, comprising: receiving a wireless communication signal by a first mobile unit having a unique identifier, the wireless communication signal transmitted by a second mobile unit associated with a vehicle; downconverting data in the received wireless communication signal from radio frequency to baseband; determining based on the downconverted data: a vehicle identifier associated with the vehicle, and a GPS position associated with the vehicle; determining by a system administrator a status of the vehicle using the vehicle identifier to monitor the vehicle for code enforcement, wherein the determining the status includes parsing the received wireless communication signal to determine the status of the vehicle; generating baseband message data indicating the status by constructing at least one data packet from a plurality of data fields, the data fields including the unique identifier of the first mobile unit and the vehicle identifier; and

upconverting the baseband message data to radio frequency for transmission to the second mobile unit, thereby transmitting the upconverted baseband message data indicating the status of the vehicle.  *See* Exhibit F.

79. Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

80. Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

81. Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

   a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

   b. Judgment that Defendant accounts for and pays to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

   c. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

   d. That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

   e. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: February 17, 2025

Respectfully submitted,

By: /s/ C. Matthew Rozier

C. Matthew Rozier (CO 46854)*
Kenneth A. Matuszewski (IL 6324308)*
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (404) 779-5305; (202) 316-1591
Telephone: (708) 870-5803
Email: matt@rhmtrial.com
Email: kenneth@rhmtrial.com

James F. McDonough, III (GA 117088)*
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Jonathan Hardt (TX 24039906)*
**ROZIER HARDT MCDONOUGH PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

## Exhibits

A. Claim Chart for U.S. Patent 6,647,270
B. Claim Chart for U.S. Patent 7,123,926
C. Claim Chart for U.S. Patent 7,783,304
D. Claim Chart for U.S. Patent 8,005,053
E. Claim Chart for U.S. Patent 6,633,616
F. Claim Chart for U.S. Patent 7,463,896

## List of Attachments

- Civil Cover Sheet
- Proposed Summons